**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN  DIVISION**


**DEMARIO D. WALKER**                                                    **PLAINTIFF**

**VERSUS**                                 **CIVIL ACTION NO. 5:08cv147-JMR**

**REGINALD L. JACKSON, SHERIFF;
LASHUNDRA GRAYSON and WILLIE DAVIS**                        **DEFENDANTS**

---

## <u>MEMORANDUM OPINION</u>:

This matter is before the Court on the following motions: Plaintiff's First Motion [49-1] for

Partial Summary Judgment was filed on October 24, 2008.  Defendants filed a Response [60-1] in

Opposition on December 2, 2008. Defendants filed a Motion [89-1] for Summary Judgment on

February 2, 2009.  Defendants' Motion is accompanied by a Memorandum [90-1] in Support thereof.

 Plaintiff filed a Response [106-1] in Opposition on February 23, 2009, and a Second Response [109-

1] in Opposition that same day.   Plaintiff's Second Motion [169-1] for Partial Summary Judgment

was filed on June 8, 2009, and was accompanied by a Memorandum [170-1] in Support and an

Affidavit [171-1].  Defendants filed a Response [175-1] in Opposition on June 11, 2009.

The Court begins by noting that the Plaintiff's First Motion [49-1] for Partial Summary

Judgment is simply a recitation of all of his allegations against Defendants.  Despite the liberality

afforded the pleadings of *pro se* litigants, the Plaintiff has failed to meet his burden of demonstrating

the absence of a genuine issue of material fact.  Therefore, this Court is of the opinion that the

Plaintiff's Motion [49-1] should be denied.

Plaintiff's Second Motion [169-1] for Partial Summary Judgment pertains to Plaintiff's

allegations that he was denied recreation and a balanced and nutritional diet while detained at the

Wilkinson County Jail. Plaintiff's sole evidence in support of his allegation that he was denied an adequate diet is Defendants' Response to Plaintiff's Requests for Admissions, wherein Defendants erroneously denied rather than admitted that the food served at the Wilkinson County Jail was adequate and nutritional. However, prior to Plaintiff's filing of his Second Motion [169-1] for Summary Judgment, Defendants filed a Motion [166-1] for Leave to File Amended Responses to Requests for Admissions. This Motion was granted by way of "TEXT ORDER ONLY" on June 15, 2009. Accordingly, the Court finds that Plaintiff has presented no credible evidence in support of his allegations that he was denied an adequate diet at the Wilkinson County Jail.

Additionally, Plaintiff's Second Motion [169-1] for Partial Summary Judgment is based upon Defendants admission that Plaintiff was not provided outdoor recreation while detained at the Wilkinson County Jail. However, the Court finds that Plaintiff has failed to state a cognizable claim pursuant to Section 1983, as prisoners do not have a constitutional right to outdoor recreation. *See Green v. Ferrel,* 801 F.2d 765, 771-72 (5th Cir.1986). Furthermore, Plaintiff was only detained at the Wilkinson County Jail from December 27, 2007, until January 11, 2008 - a period of approximately fifteen (15) days. The Court is simply unable to conclude that such a temporary deprivation of outdoor recreation rises to the level of a violation of Plaintiff's constitutional rights. Accordingly, the Court finds that Plaintiff's Second Motion [169-1] for Summary Judgment should be denied.

The final Motion currently pending before the Court is Defendants' Motion [89-1] for Summary Judgment. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds that the Defendants' Motion [89-1] for Summary Judgment should be granted. Accordingly, Plaintiff's Complaint in the above-captioned action should be dismissed.

# **PROCEDURAL HISTORY:**

Plaintiff filed this *pro se* § 1983 action against Defendants on February 15, 2008, alleging that he suffered violations of his constitutional rights while being held as a pretrial detainee at the Wilkinson County Jail. An Omnibus Hearing was conducted in this matter on December 1, 2008. Following an exchange of evidentiary materials between the parties, Defendants' counsel requested that Plaintiff sign and return a medical records release, and the Court instructed Plaintiff to do so by way of "TEXT ONLY ORDER" on December 2, 2008. Finally, Defendants' counsel notified the Court of his intention to file a Motion to Dismiss, and the Court instructed him to submit the proposed Motion within ten days of the Hearing. Additionally, both Plaintiff and Defendants consented to Jurisdiction by Magistrate for all further proceedings. *See* Docket Entry [63-1].

In the period following the Hearing, Plaintiff submitted an anticipatory Response [62-1] to Defendants' proposed Motion to Dismiss. However, Defendants never submitted the motion as originally planned. In the interim, it appears that Defendants and Plaintiff were involved in a dispute concerning which portions of Plaintiff's medical records were relevant. Plaintiff filed a Motion [69-1] to Limit Medical Records, to which Defendants filed a Response [73-1]. On January 29, 2009, the Court issued a "TEXT ORDER ONLY" granting in part and denying in part Plaintiff's Motion [69-1] to Limit Medical Records, and ruled that the relevant period was between December 1, 2007, and January 29, 2009.

On January 21, 2009, Defendants filed a Motion [77-1] to Seal Documents and indicated that they were ready to submit a Motion for Summary Judgment and were merely awaiting the Court's ruling on the pending motion in order to protect Plaintiff's privacy interests. The Court granted Defendants' Motion [77-1] by way of "TEXT ORDER ONLY" on January 29, 2009, and Defendants then filed their Motion [89-1] for Summary Judgment on February 2, 2009.

Plaintiff immediately submitted a Motion [85-1] for Extension of Time to Reply to Defendants' pending Motion for Summary Judgment. In said Motion, Plaintiff alleged that he had lost his records and needed additional time to prepare an adequate response. The Court granted Plaintiff's Motion by way of "TEXT ONLY ORDER" on February 4, 2009, and provided him with copies of his Complaint, Amended Complaint, and Defendants' Answer.

On February 9, 2009, Plaintiff filed another Motion [95-1] for Extension of Time to reply to Defendants' Motion for Summary Judgment, and alleged that he needed until March 29, 2009 - a period of approximately fifty days - to properly prepare a Response to the pending motion. Plaintiff alleged that he lacked research materials and adequate postage, and that his health would not allow him to submit a response before his requested date. The Court found that Plaintiff's grounds were not credible, and entered an Order [100-1] granting Plaintiff until March 6, 2009, in which to file his Response.

On February 17, 2009, the Plaintiff, despite his alleged lack of postage and poor health, filed a Motion [101-1] for Records and a Motion [102-1] for Oral Argument concerning Defendant's pending Motion for Summary Judgment. Plaintiff's Motion for Records requested that Defendants provide him with his medical records during the period of his incarceration at Wilkinson County Jail, his full jail file, the jail file for another inmate that allegedly assaulted Plaintiff, and Wilkinson County Jail's hourly check log from December 27, 2008, until January 11, 2008. On February 23, 2009, Plaintiff filed a Motion [105-1] to Subpoena various records pertaining to the Wilkinson County Jail.

On February 23, 2009, Plaintiff submitted his Response [106-1] in Opposition to Defendants' Motion for Summary Judgment, which was accompanied by a Memorandum [107-1] in Support thereof. Additionally, that same day, Plaintiff submitted a Second Response [109-1] in Opposition

to Defendants' Motion for Summary Judgment. These Responses were filed in tandem with a Motion [108-1] to Stay or postpone this Court's ruling on said Motion for Summary Judgment until Plaintiff had the opportunity to draft an "adequate" Response.

In his Motion [108-1] to Stay, Plaintiff alleged that he must be in possession of certain documents before he would be capable of filing an "adequate" Response. First, Plaintiff contended that he needed a copy of his complete medical records, notwithstanding his earlier efforts to limit Defendants' access to only a small portions of those very records. Further, Plaintiff contended that he needed access to his complete prison file, and an opportunity to consult with his expert, Harvey Cox, regarding the conditions of the Wilkinson County Jail. Finally, Plaintiff requested a copy of another inmate's prison file.

In response, Defendants contended that Plaintiff's records requests were made in bad faith and were designed to merely delay or postpone the Court from ruling on their pending Motion [89-1] for Summary Judgment. Defendants contended that Plaintiff had ample opportunity to conduct adequate discovery, but rather chose to spend his time filing repetitive and frivolous motions. Further, Defendants contended that several of the Plaintiff's requests are either irrelevant or privileged.

After reviewing the record, the Court held that the interests of justice mandated that Plaintiff be allowed to conduct limited discovery in order to properly draft a Response to Defendants' Motion for Summary Judgment. However, the Court agreed with Defendants' contentions that several of Plaintiff's requests were unnecessary, and therefore, in the interests of judicial economy, the Court limited Plaintiff's discovery to issues which were relevant to this action.

The Court found that Plaintiff was entitled to the portion of his medical records which corresponded with his dates of incarceration at the Wilkinson County Jail. Further, the Court found

that Plaintiff should be provided with his complete inmate file. However, the Court found that no consultation was necessary with Plaintiff's expert regarding the conditions of the Wilkinson County Jail, as Plaintiff had transferred from the facility many months earlier. Further, the Court found that Plaintiff had not set forth sufficient grounds to justify his discovery of another inmate's prison files.

Therefore, the Court entered an Order [121-1] to Postpone Ruling on Defendants' Motion for Summary Judgment until Plaintiff was provided with a copy of his jail file and medical records corresponding with his dates of incarceration. The Court further provided Plaintiff with thirty (30) days from the Notice of Service of the above-mentioned records in which to draft and submit his final Response in Opposition to Defendants' Motion for Summary Judgment. On March 27, 2009, Plaintiff filed a Response [125-1] to this Court's Order [108-1] to Stay, in which Plaintiff clarified that he was only requesting the medical records pertaining to his visit to Dr. Robert Lewis at Catchings Clinic in Woodville, Mississippi. On March 31, 2009, Defendants filed a Motion [128-1] for Extension of Time to comply with this Court's Order [108-1] which the Court granted by way of "Text Order Only"on April 1, 2009. In said Order, the Court note that Plaintiff's primary concerns were in regards to the medical records of Dr. Robert Lewis.

On April 3, 2009, Defendants entered a Notice [130-1] of Service indicating that Plaintiff had been served with his requested documentation and records. Plaintiff promptly filed a litany of motions regarding the submitted records, which included a Motion [137-1] for Hearing, a Motion [139-1] of Acknowledgment of Service and Objections to the medical records from Catchings Clinic, as well as a Motion [141-1] to Exclude Medical Records of Catchings Clinic. On April 30, 2009, the Court denied Plaintiff's Motion [137-1] for Hearing by "Text Order Only" and further cautioned Plaintiff that his final Response to Defendant's Motion for Summary Judgment was due on or before May 11, 2009. In the following days, Plaintiff filed a host of other Motions, Status Updates, and

various other filings, but failed to submit his Response as per this Court's Order [108-1].

On May 19, 2009, Plaintiff filed a Motion [159-1} for Leave to File Response to Motion for Summary Judgment, which the Court granted by "Text Order Only," and provided Plaintiff ten (10) days, or until June 1, 2009, in which to file his Response. On June 1, 2009, Plaintiff elected to file a Motion [162-1] to Compel Defendants' responses to discovery requests, and failed to file his Response as per this Court's Order. However, the following day, Defendants' Counsel notified that Court that Plaintiff have forwarded his Response to Defendants' Motion [89-1] for Summary Judgment directly to them as opposed to filing it with the Court. On June 12, 2009, the Court entered an Order [176-1] directing Plaintiff to file his Response with the Court on or before June 22, 2009.

In the days following, Plaintiff filed a glut of additional motions, including his third Motion [178-1] to Compel, a second Motion [181-1] to Stay, and a Motion [183-1] for Evidentiary Hearing. The Court denied the Motion to Compel and Motion to Stay by way of "Text Order Only" on June 17, 2009, and cautioned Plaintiff that his Response was due on or before June 22, 2009. The Court further cautioned Plaintiff that it would not tolerate any further attempts to delay or postpone the Court's ruling on Defendants' Motion [89-1] for Summary Judgment.

Plaintiff failed to submit his Response by the Court's deadline of June 22, 2009. After considering the record of the proceedings, the Court finds that Plaintiff has repeatedly failed to comply with this Court's Orders regarding the time frame within which to submit his Response to Defendants' Motion [89-1]. Accordingly, the Court finds that Defendants' Motion [89-1] for Summary Judgment is ripe and ready for disposition at this time.

**STATEMENT OF THE CASE:**

Plaintiff, Demario Walker, was arrested and detained in the Wilkinson County Jail from December 27, 2007, until January 11, 2008 - a period of approximately fifteen (15) days. On January 4, 2008, Plaintiff was involved in an altercation with a cell mate, Brett Tracy. *See* Exhibit "E" attached to Motion [89-1]. Tracy allegedly threatened to assault Plaintiff, and then tore hair from his scalp. *See* Memorandum [107-1]. The altercation was short lived, as other inmates quickly intervened. *See* Exhibit "C" attached to Motion [89-1]. Officers responded to the altercation, instructed Tracy to calm down, but allowed the two men to remain in the same cell. As the Officers walked back down the hall, Tracy ran up to Plaintiff and struck him in the nose. *Id.* Following this second incident, Tracy was removed from the cell and placed in isolation. *See* Exhibit "E" attached to Motion [89-1]. Plaintiff did not request medical attention for the injury to his nose at any point during his detention at Wilkinson County.

Plaintiff alleges that he notified Defendants of various health problems, including sickle cell anemia, upon being booked into the Wilkinson County Jail. *See* Memorandum [107-1]. On January 8, 2008, Plaintiff filled out a medical request to see a doctor for treatment of "sickle cell and seizures." *See* Exhibit "G" attached to Motion [89-1]. Plaintiff was taken from the Wilkinson County Jail to see Dr. Robert Lewis at the Catchings Clinic in Woodville, Mississippi. *See* Memorandum [107-1]. Dr. Lewis examined Plaintiff and prescribed him Dilantin, Hydroyurea, and Folic Acid. *See* Exhibit "G" attached to Motion [89-1]. These prescriptions were filled and provided to Plaintiff on that same day. *See* Exhibit "F" attached to Motion [89-1].

Plaintiff further alleges that the conditions of his confinement at the Wilkinson County Jail violated his constitutional rights. Specifically, Plaintiff alleges that he was not allowed outside recreation, he was denied access to newspapers, he was not provided with soap, towels, or clean laundry, and he was served food that was unbalanced and in portions too small to provide adequate

nourishment.  Plaintiff seeks both compensatory and punitive damages, as well as injunctive relief.


## STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment."  *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987).  "The requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.  Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'"  *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion.  *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986).  To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986).  To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact.  *See Howard*, 783 F.2d at

1315.

## **APPLICABLE LAW:**

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are

necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79.

The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

<u>**ANALYSIS:**</u>

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[1] or "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement

---

[1] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

that constitute "punishment." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996). "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless" *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is also appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

The Court notes that Plaintiff's Complaint alleges both unconstitutional conditions of confinement and episodic acts or omissions. Therefore, the Court shall address the two categories of allegations individually.

## I. Conditions of Confinement:

Plaintiff alleges that Defendants are officially liable because they failed to remedy the allegedly unconstitutional conditions at the Wilkinson County Jail. The Court notes that Plaintiff's official capacity claim against Defendants are, in reality, a claim against the offices which they occupied at the time of the alleged incident and, ultimately, Wilkinson County. Therefore, to the extent Plaintiff brings this action against Defendants in their official capacities, he must establish

a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that Wilkinson County had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects Wilkinson County's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

A large portion of Plaintiff's Complaint is dedicated to challenging the constitutionality of his conditions of confinement at the Wilkinson County Jail. Specifically, Plaintiff alleges that he was denied outdoor recreation, personal hygiene items, access to newspapers, and a nutritional diet. However, other than the above allegations of unconstitutional conditions, Plaintiff presents no evidence that an official policy of Wilkinson County was responsible for the alleged violation of his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to support the instant official capacity claims against Defendants. Accordingly, Defendants are entitled to summary judgment on Plaintiff's official capacity claims as they relate to the conditions of the Wilkinson County Jail.

Additionally, Plaintiff's Complaint seeks to impose liability against Defendants in their individual capacities for the allegedly unconstitutional conditions at the Wilkinson County Jail. However, because Defendants are law enforcement officials, they may raise the defense of qualified immunity. *See Gagne v. City of* Galveston, 805 F.2d 558, 559 (5th Cir. 1986).

In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). As a pretrial detainee, Plaintiff has a constitutional right not to

be punished for the crimes with which he has been charged.  Therefore, to the extent that Plaintiff seeks to establish § 1983 liability against Defendants, Plaintiff must offer proof that the conditions at the Wilkinson County Jail were imposed as a form of punishment.  *Hamilton,* 74 F.3d at 103. A punitive purpose can be established by direct evidence of intent by detention facility officials to punish the pretrial detainee. *Bell,* 441 U.S. at 538.  Alternatively, a punitive purpose may be inferred if the challenged condition is not reasonably related to a legitimate governmental objective.  *Id.* at 539.

Plaintiff alleges that he was denied an outdoor recreation period during his detention at the Wilkinson County Jail.  However, after examining the available evidence, the Court finds that Plaintiff's allegations regarding the denial of outdoor recreation fail to rise to the level of a constitutional violation.  It is well settled that "the Constitution does not mandate comfortable prisons," and that prison conditions may be "restrictive and even harsh"  *Hernandez v. Velasquez,* 522 F.3d 556, 560 (5ᵗʰ Cir. 2008) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 349 (1981)). Furthermore, neither the Supreme Court nor the Fifth Circuit have specifically held that prisoners enjoy an absolute right to outdoor exercise. *See Green v. Ferrel,* 801 F.2d 765, 771-72 (5th Cir.1986).  The Court notes that Plaintiff was only detained at the Wilkinson County Jail for a period of approximately two weeks.  Further, Plaintiff has failed to allege or offer any evidence to warrant the inference that other detainees at the Wilkinson County Jail were allowed recreation, and that Plaintiff was treated differently as a form of punishment.   Absent some indication of punitive intent, the Court concludes that Plaintiff's allegations fail to create a genuine issue as to whether Defendants violated his constitutional rights.  This issue is without merit.

Plaintiff's allegations that he was denied access to the media or newspapers during his detention likewise fail to rise to the level of a constitutional violation.   Plaintiff has presented no

evidence that he was denied these materials as a form of punishment. Furthermore, as previously noted, Plaintiff was only detained at the Wilkinson County Jail for approximately a two-week period. The Court simply cannot conclude that being deprived of a newspaper for two weeks is tantamount to a deprivation of due process, as "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 (*citing Ingraham v. Wright*, 430 U.S. 651, 674 (1977). This issue is without merit.

Plaintiff's allegations that he was denied hygiene items such as soap and towels, denied clean bed linens, and forced to sleep on a floor also fail to raise a genuine issue as to whether he suffered a violation of his constitutional rights. The Court notes that pretrial detainees do not have a constitutional right to an elevated bed. *Mann v. Smith*, 796 F.2d 79, 85-6 (5th Cir. 1986). Furthermore, Plaintiff's allegations concerning the denial of clean sheets, soap, and clean towels for a two week period also fail to rise to the level of a constitutional deprivation. Such a temporary inconvenience is not the kind of extreme deprivation that amounts to punishment. Moreover, the daily management of prison operations is best left to the knowledge and expertise of prison administrators. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). This issue is without merit.

Finally, Plaintiff alleges that the food at the Wilkinson County Jail was not balanced or nutritional and was served in insufficient portions. However, Plaintiff has offered no evidence or even made an allegation that the food at the Wilkinson County Jail is served in this alleged manner as a form of punishment. Additionally, Plaintiff was only detained at the facility for a two week period. The Court is simply unable to conclude that such a temporary inconvenience rises to the level of a constitutional violation. This issue is without merit.

Assuming, *arguendo*, that Plaintiff has created a genuine issue as to whether the conditions of his confinement at the Wilkinson County Jail constituted a violation of his constitutional rights,

the Court concludes that Defendants are still entitled to summary judgment because Plaintiff has failed to allege a physical injury. Pursuant to 42 U.S.C. § 1997e(e),"[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Since Plaintiff has not suffered any physical injury as a result of the conditions of confinement alleged in the complaint, except for minimal weight loss, § 1997e(e) bars his claim for compensatory damages for mental pain and suffering. Accordingly, Plaintiff is not entitled to relief on his conditions of confinement claims, and all such claims should be dismissed against Defendants in both their individual and official capacities.

## II.  Episodic Acts and Omissions:

In addition to the allegations concerning the conditions of the Wilkinson County Jail, Plaintiff also alleges that Defendants are liable in both their official and individual capacities for various episodic acts and omissions which constituted deliberate indifference to his constitutional rights.

## A.  Denial of Adequate Medical Treatment:

Plaintiff alleges that he suffers from sickle cell anemia and an unspecified seizure disorder, and that Defendants failed to provide him adequate medical treatment for his conditions. The Court notes that Plaintiff's official capacity claims against Defendants are, in reality, claims against the offices which Defendants occupied at the time of the alleged incident and, ultimately, Wilkinson County. Therefore, to the extent Plaintiff brings this action against Defendants in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the Wilkinson County Jail had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is

linked to the constitutional violation(s); and that the official policy reflects the Wilkinson County Jail's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff claims that Defendants failed to provide him with proper medical care. However, other than the above mentioned allegations of inadequate medical care, Plaintiff presents no evidence that an official policy existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claims against Defendants.

Plaintiff's Complaint also seeks liability against Defendants in their individual capacities. In response, Defendants have pleaded the defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert,* 500 U.S. at 231. When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Gibbs*, 254 F.3d at 548. In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See*

*Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Plaintiff claims that Defendants failed to provide him with proper medical care. Specifically, Plaintiff alleges that between December 27, 2007, and January 8, 2008, he was provided no medication for his sickle cell anemia and an unspecified seizure disorder. Further, Plaintiff alleges that, on January 8, 2008, he filled out a medical request to see a doctor for treatment of "sickle cell and seizures." *See* Exhibit "G" attached to Motion [89-1]. Plaintiff was then taken from the Wilkinson County Jail to see Dr. Robert Lewis at the Catchings Clinic in Woodville, Mississippi. *See* Memorandum [107-1]. Dr. Lewis examined Plaintiff and prescribed him Dilantin, Hydroyurea, and Folic Acid. *See* Exhibit "G" attached to Motion [89-1]. These prescriptions were filled and provided to Plaintiff on that same day. *See* Exhibit "F" attached to Motion [89-1].

Based on the evidence of record, the Court is simply unable to conclude that Plaintiff has created a genuine issue of material fact as to whether Defendants were deliberately indifferent to his serious medical needs. Plaintiff has presented no evidence in the form of sick call requests or medical requests tending to indicate that he sought either treatment or medication prior to January 8, 2008. Absent some indication that Defendants were subjectively aware that he was suffering from a serious medical condition and in need of medication, the Court is unable to find that Defendants alleged failure to provide him with medication constituted deliberate indifference.

The Court notes that medical records or medication, diagnosis, and sick calls may rebut an

inmate's allegation of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). It is the Court's opinion that Plaintiff's allegations are discredited by the actions of Defendants following Plaintiff's request for medical treatment on January 8, 2008. All available medical evidence indicates that, following Plaintiff's request for medical treatment on January 8, 2008, Plaintiff was promptly transported to Dr. Robert Lewis for medical evaluation and diagnosis. Furthermore, Plaintiff was prescribed medication which was filled and provided to Plaintiff that very day. The Court is simply unable to conclude that Defendants' actions are reflective of deliberate indifference. Conversely, it appears that Plaintiff's medical request was promptly acted upon and he was provided timely and competent treatment. This issue is without merit.

## B. Failure to Protect:

Plaintiff further alleges that Defendants exhibited deliberate indifference by failing to protect him from violence at the hands of another inmate. Specifically, Plaintiff alleges that he was placed in a cell with Brett Tracy, a fellow inmate, and that Tracy made specific threats to assault Plaintiff in order to be moved into isolation. *See* Response [107-1]. Plaintiff alleges that he and Tracy became involved in an altercation in which Tracy attacked him and tore hair from his scalp. *Id.* Officers at the Wilkinson County Jail responded to the incident, but other inmates had already intervened and separated Walker and Tracy. *See* Exhibit "C" attached to Motion [89-1]. The Officers instructed Tracy to calm down, but allowed the two men to remain in the same cell. As the Officers walked back down the hall, Tracy ran up to Plaintiff and struck him in the nose. *Id.* Following this second incident, Tracy was removed from the cell and placed in isolation. *See* Exhibit "E" attached to Motion [89-1].

As previously noted, Plaintiff brings this action against Defendants in both their individual and official capacities. In order to establish an official capacity claim, he must establish a

constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the Wilkinson County Jail had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the Wilkinson County Jail's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff alleges that Defendants failed to have an adequate classification policy in place at the Wilkinson County Jail. Specifically, Plaintiff alleges that he was a known homosexual, and therefore at a high risk of suffering violence at the hands of fellow inmates. Further, Plaintiff alleges that Brett Tracy was suffering from mental illness and should have been segregated from the rest of the prison population.

However, the Court notes that prisoners do not have a constitutional right to be housed in a particular facility. *See Olim v. Wakinekona*, 461 U.S. 238, 244-46 (1983). Furthermore, in matters of prison administration, the Federal Courts exercise a "minimum intrusion policy." *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990). The decisions of prison administrators are given wide discretion in the operation of prison facilities. *Procunier v. Martinez*, 416 U.S. 396 (1974). Finally, the classification of prisoners is an example of a decision customarily left up to the discretion of prison officials. *See Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983). Therefore, based upon the above legal principles, the Court is unable to conclude that Defendants' allegedly inadequate classification policy would subject them to liability pursuant to Section 1983.

Assuming, *arguendo*, that Plaintiff has created a genuine issue as to whether Defendants implemented a policy that was the moving force behind the alleged violation of Plaintiff's constitutional rights, the Court is unable to conclude that Defendants' allegedly inadequate classification policy constituted deliberate indifference to Plaintiff's safety. Prison officials violate

the Constitution only if they are both aware of a substantial risk to an inmate's safety and fail to respond properly. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Therefore, Plaintiff must show that he was incarcerated under conditions that create a substantial risk of serious harm, and that Defendants were deliberately indifferent to his safety. *See Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). The standard is subjective. Thus, "[t]he official must both be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and must in fact also have drawn the inference." *Id.* at 593 (internal quotations omitted).

Based upon the facts presented before the Court, we are unable to conclude that Defendants were deliberately indifferent to Plaintiff's safety. Although Plaintiff alleges that Tracy had communicated a threat to him prior to the first altercation, there is no evidence that Plaintiff notified the Defendants of this matter. Absent some indication that Defendants were subjectively aware of the potential for violence, the mere utterance of a threat is insufficient to give rise to liability for failure to protect Plaintiff.

The gravamen of Plaintiff's argument is that Defendants exhibited deliberate indifference as to his safety when they failed to remove Tracy from Plaintiff's cell after the first altercation. However, the available evidence indicates that Defendants responded to the altercation in a timely fashion, and that it was already over by the time they reached Plaintiff's cell. Therefore, Defendants cautioned Tracy to refrain from any further violence and proceeded to exit the cell block. As they were leaving, Tracy approached Plaintiff again and punched him in the face. Defendants immediately removed Tracy from the cell and placed him in isolation.

After viewing the evidence in a light most favorable to the Plaintiff, the Court concludes that Defendants did not display deliberate indifference to Plaintiff's safety. As previously noted, the first altercation was, by Plaintiff's own account, a minor scrape and was broken up before

Defendants even reached the cell. The Court finds that such a short lived confrontation is insufficient to find that Defendants were subjectively aware of a serious risk to Plaintiff's safety. Furthermore, after the second incident, Defendants responded immediately and removed Tracy from Plaintiff's cell. At worst, Defendants were negligent in their handling of the first altercation. However, deliberate indifference is the subjective intent to cause harm, and it cannot be inferred from a jail official's failure to act reasonably. It is not the same as negligence. *Hare,* 74 F.3d at 648. Accordingly, the Court is unable to conclude that Plaintiff has created a genuine issue as to whether Defendants violated his constitutional rights.

To the extent that Plaintiff seeks to establish a claim against Defendants in their individual capacities, Defendants contend that they are shielded by the defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged the violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). If a violation of a right has been alleged, then it must be determined whether the defendant's conduct was objectively reasonable. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare*, 135 F.3d at 327.


As previously discussed, the Court is unable to conclude that the available evidence creates a genuine issue as to whether Plaintiff suffered a violation of his constitutional rights. Plaintiff has presented no evidence that Defendants were subjectively aware of a serious risk to his safety. At best, Plaintiff has produced facts tending to indicate that Defendants were negligent in their assessment of the situation. However, mere negligence is not actionable pursuant to Section 1983.

Assuming, *arguendo*, that Plaintiff suffered a violation of his constitutional rights, the Court

finds that Defendants would still be entitled to qualified immunity because their conduct was objectively reasonable. Plaintiff has presented no evidence that Defendants were aware that Tracy posed a significant threat to Plaintiff's safety prior to the first altercation. Furthermore, all available evidence indicates that the first altercation was minor and resulted in no significant injuries to either party. The Court is unable to conclude that Defendants were unreasonable in admonishing Tracy's conduct but allowing him to remain in Plaintiff's cell. After it became apparent that Tracy could not be left in the same cell as Plaintiff, Defendants had him removed and placed in isolation. Based upon the record of evidence, the Court finds that Defendants did not behave in an objectively unreasonable manner. Therefore, Defendants are entitled to qualified immunity as to Plaintiff's individual capacity claims. This issue is without merit.

<u>**CONCLUSION**</u>:

Based on the forgoing analysis, this Court is of the opinion that Plaintiff has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his section 1983 claim. Therefore, this Court finds Defendants' Motion [89 -1] for Summary Judgment should be granted, and that all claims against Defendants should be dismissed with prejudice, both in their individual and official capacities.


This the ___23rd___ day of June, 2009.

                                  _____s/ John M. Roper_____
                                  CHIEF UNITED STATES MAGISTRATE JUDGE